UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN A. DEMAREST, an individual,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>QUICK LOAN FUNDING, INC., et al.,<br><br>　　　　　Defendants. | ) CASE NO. CV09-01687 MMM (SSx)<br>)<br>)<br>) ORDER GRANTING PLAINTIFF'S<br>) APPLICATION FOR PRELIMINARY<br>) INJUNCTION<br>)<br>)<br>)<br>)<br>) |

Plaintiff Joan A. Demarest commenced this action in Los Angeles Superior Court on February 23, 2009 against defendants Quick Loan Funding, Inc.; Ocwen Loan Servicing, LLC; Aztec Foreclosure Corporation; Mortgage Electronic Registration System, Inc. ("MERS"); HSBC Bank USA; and Platinum Coast Escrow, Inc.[1] Ocwen, MERS, and HSBC removed the action to this court on March 10, 2009. On March 23, 2009, the court granted plaintiff's application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. Plaintiff seeks a preliminary injunction restraining defendants from conducting a trustee's

---

[1] Quick Loan is the original lender in whose favor the mortgage at issue was recorded. HSBC is the trustee of Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-HE2, the present holder of the mortgage. Ocwen is the servicer of the loan. The complaint alleges that MERS is "the original nominee" of Quick Loan; that Platinum, a wholly-owned affiliate of Quick Loan, is the escrow company that handled plaintiff's purchase of the property; and that Aztec is also a trustee.

sale of the real property located at 6568 Sheltondale Avenue, West Hills, CA 91307 (the "property").

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.    Factual Allegations in Plaintiff's Complaint**

Plaintiff is the sole owner of the property, which is her primary residence.[2]  She alleges that defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1631 et seq., and various provisions of the California Civil Code related to mortgage loans and foreclosure sales.

On December 23, 2005, plaintiff applied to Quick Loan for an adjustable rate loan secured by a mortgage on the property.[3]  Plaintiff contends that Quick Loan failed to give her a copy of the *Consumer Handbook on Adjustable Rate Mortgages*; documentation providing an example of the payment terms that would result from an increase in the interest rate on the loan; and notice of her right to rescind the loan.[4]  She asserts that she received an "amended final loan statement" dated January 9, 2006, which showed a balance due her of $40,794.73.  Correspondence dated that same day, sent by Platinum, referenced a wire transfer of $36,568.03.  Plaintiff alleges that she never received the additional $4,226.70, and that Platinum never explained the discrepancy between the amount on the loan statement and the amount of the wire transfer.[5]

Plaintiff admits that she "fell behind" on her loan payments.[6]  Thereafter, on December 20, 2008, plaintiff sent a notice of rescission to Quick Loan and Ocwen.[7]  Ocwen posted a notice

---

[2] Complaint, ¶¶ 1, 9.

[3] *Id.*, ¶ 11.

[4] *Id.*, ¶¶ 12-13.

[5] *Id.*, ¶ 14.  Plaintiff alleges that "Platinum subsequently sent [her] a check for approximately $1,300.00, but [the] check bounced," and she "gave up trying to address this problem." (*Id.*)

[6] *Id.*, ¶ 15.

[7] *Id.*, ¶ 16.

of trustee's sale at the property on February 5, 2009, indicating a sale date of February 24, 2009.[8] Plaintiff asserts that, other than sending her "boilerplate mailings encouraging modification," defendants never contacted her to assess her financial situation and explore options for avoiding foreclosure.[9] She contends that she "attempted to contact Ocwen to explore options for modifying the loan" through her counsel, but received no response.[10]

Plaintiff's complaint pleads claims for cancellation of written instrument; conversion; declaratory relief; injunctive relief; rescission of the loan agreement; and violation of TILA.

### B. The State Court TRO

At the time plaintiff commenced the action in state court on February 23, 2009, she applied for a temporary restraining order. Although her attorney attempted to contact defendants, no opposition was filed, and Judge James Chalfant granted the application that same day. Defendants were ordered to show cause by March 17, 2009 why they should not be restrained from completing the trustee's sale pending adjudication of the case. On March 10, 2009, HSBC, Ocwen, and MERS removed the action to federal court.

### C. The Federal Court TRO

On March 20, 2009 plaintiff filed an application for a temporary restraining order and order to show cause why a preliminary injunction should not issue. Defendants did not oppose plaintiff's application, and it was granted on March 23, 2009. The TRO restrained defendannts from conducting a trustee's sale pending a hearing on the order to show cause. HSBC, Ocwen, and MERS filed opposition to the application for preliminary injunction on March 27, 2009, and plaintiff replied on April 1, 2009.[11]

---

[8] *Id.*, ¶ 17.

[9] *Id.*, ¶¶ 18-19.

[10] *Id.*, ¶ 18.

[11] The court declines to consider plaintiff's assertion, raised for the first time in reply, that she is entitled to rescission because defendants gave her only one copy of the notice of right to rescind rather than two.

3

### D. Evidence Adduced by Plaintiff

In support of her application, plaintiff submits a declaration regarding the circumstances surrounding her entry into the loan agreement and defendants' alleged TILA violations;[12] a copy of the deed of trust, which states that the loan agreement was executed on December 25, 2005, and that the term of the loan was to run through 2036;[13] copies of correspondence with Platinum regarding the $4,226.70 discrepancy;[14] a hand-written letter to Ocwen and Quick Loan rescinding the transaction; and a copy of the notice of trustee's sale.[15]

### E. Defendants' Opposition

Defendants proffer the declaration of Ocwen's manager;[16] a copy of the Deed of Trust;[17] proof of plaintiff's delinquencies on her loan payments;[18] and copies of disclosure documents and notice of right to rescind that they contend were given to plaintiff at the time the loan documents were executed.[19] The copy of the deed of trust submitted by defendants contains various riders that are not attached to the version plaintiff submitted. Among these is an "Adjustable Rate Rider," which indicates that the interest rate on plaintiff's loan could vary from a minimum of 9.9% to a maximum of 15.9%.[20] Defendant also submits copies of "Ocwen system computer printouts," purportedly reflecting Ocwen's telephone contacts with plaintiff "to assess her financial

---

[12] Declaration of Joan A. Demarest ("Demarest Decl.").

[13] *Id.*, Exh. 1.

[14] *Id.*, Exh. 3-4.

[15] *Id.*, Exh. 5-6.

[16] Declaration of Kevin Jackson ("Jackson Decl.").

[17] *Id.*, Exh. A.

[18] *Id.*, Exh. B.

[19] *Id.*, Exh. D.

[20] *Id.*, Exh. A at 18-19.

4

situation and . . . explore alternative options to foreclosure."[21] As these documents are illegible, the court has not considered them.

Defendants assert that they have complied with the requirements of TILA and California Civil Code § 2923.5, and that plaintiff's statements to the contrary are "self-serving."[22] They also assert that the doctrine of unclean hands bars plaintiff from obtaining injunctive relief.[23]

## II. DISCUSSION

### A. Standard Governing Preliminary Injunctive Relief

"The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car of Washington, Inc. v. Travelers Indem. Co.*, 774 F.2d 1371, 1374 (9th Cir. 1985). A court may issue a preliminary injunction if plaintiff demonstrates "'either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.'" *Clear Channel Outdoor Inc., a Delaware Corp. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (quoting *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999)); see *Miller v. California Pacific Medical Center*, 19 F.3d 449, 456 (9th Cir. 1994).[24] "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874

---

[21]*Id.*, ¶ 5, Exh. C.

[22]Opposition of Defendants to Plaintiff's Request for Preliminary Injunction ("Opp.") at 2.

[23]*Id.* at 5.

[24]A "serious question" is one as to which the moving party has "a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (quotations omitted).

5

(9th Cir. 2000). "They are not separate tests but rather outer reaches of a single continuum." *Baby Tam & Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998), abrogated by *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004). "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown.'" *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) (quoting *National Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984).

"Irreparable harm," for purposes of obtaining preliminary injunctive relief, is harm "that cannot be redressed by legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Systems, Inc.*, 323 F.Supp.2d 1037, 1050 (N.D. Cal. 2004) (citing *Public Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). Because of this, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (citing *Los Angeles Mem'l Coliseum Comm'n*, 634 F.2d at 1201); see also *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough [to constitute irreparable injury]" (internal quotation marks omitted)).

### B. Plaintiff's Likelihood of Success on Her Rescission Claim Under TILA

Plaintiff's claims for cancellation of written instrument, declaratory relief, rescission and violation of TILA are all based on allegations that defendants violated TILA and/or provisions of the California Civil Code related to mortgage loans and foreclosure sales.[25] The court first examines whether plaintiff has demonstrated a likelihood that she is entitled to rescind the loan agreement because defendants violated TILA.

Plaintiff asserts that defendants violated TILA by failing to provide her with a copy of the

---

[25]Because plaintiff's claim for conversion seeks only monetary damages, i.e, the $4,226.70 that was not wire transferred on January 9, 2006, and punitive damages, the court need not evaluate the merits of the claim in assessing plaintiff's entitlement to preliminary injunctive relief. See *Rent-A-Center,* 944 F.2d at 603 (an inthat which can be remedied by money damages alone will not support a finding of irreparable harm).

6

*Consumer Handbook on Adjustable Rate Mortgages*; with documentation providing an example of the payment terms that would result from an increase in the interest rate on the loan; and with notice of her right to rescind the loan. She further alleges that defendants violated TILA by understating the annual percentage rate and finance charge for the loan, and "overstating the amount financed."[26]

### 1. Whether Plaintiff's Loan Is an Open-End Credit Transaction or a Closed-End Credit Transaction

Under TILA and Regulation Z,[27] different disclosure requirements apply to lenders depending on whether the loan in question is an "open-end credit" transaction or a "closed-end credit" transaction. See *Benion v. Bank One, Dayton, N.A.*, 144 F.3d 1056, 1057 (7th Cir. 1998) ("The Truth in Lending Act has separate disclosure requirements for 'open-end' and 'closed-end' credit transactions. The requirements for the latter are more onerous"). TILA defines an "open-end credit plan" as "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i); see also 12 C.F.R. § 226.2 (20) ("Open-end credit means consumer credit extended by a creditor under a plan in which: (i) The creditor reasonably contemplates repeated transactions; (ii) The creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) The amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid").[28] Examples of open-end credit include "credit-card credit and revolving credit

---

[26]Complaint, ¶ 45.

[27]Regulation Z is the name for a set of regulations promulgated by the Federal Reserve Board that specify creditors' obligations under TILA. See *Benion*, 144 F.3d at 1057 ("The Federal Reserve Board . . . has the statutory power to make regulations particularizing the obligations of creditors under [TILA]," citing 15 U.S.C. § 1604(a)).

[28]The Federal Reserve Board's Official Staff Interpretations of the section of Regulation Z defining open-end credit elaborates: "[T]he creditor must reasonably contemplate repeated

more broadly." See *Benion*, 144 F.3d at 1058. "Closed-end credit," by contrast, "means consumer credit other than open-end credit." 12 C.F.R. § 226.2(10).

The parties do not directly address whether plaintiff's loan constituted an open-end or closed-end credit transaction. It appears, however, that the loan was a closed-end credit transaction. See, e.g., *McAnaney v. Astoria Financial Corp.*, No. 04-CV-1101 (JFB)(WDW), 2007 WL 2702348, *6 (E.D.N.Y. Sept. 12, 2007) ("A 'closed-end credit' transaction . . . includes a completed loan like a mortgage or a car loan," citing *Cardiello v. The Money Store, Inc.*, No. 00 CIV. 7332(NRB), 2001 WL 604007, *3 n. 8 (S.D.N.Y. June 1, 2001) and *Baskin v. G. Fox & Co.*, 550 F.Supp. 64, 66-67 (D. Conn. 1982)); *Wilkinson v. Wells Fargo Bank MN*, No. 06-C-1288, 2007 WL 1414888, *3 n. 4 (E.D. Wis. May 9, 2007) ("To the extent that Wilkinson alleges a mortgage loan in the complaint, that loan creates a closed-end credit relationship"); see also *Allen v. Homeq Servicing, Inc.*, No. C-08-1698 MMC, 2008 WL 2609801, *1 (N.D. Cal. June 30, 2008) (denying leave to amend to allege a claim for violation of 15 U.S.C. § 1637, which applies to open-end credit transactions, because plaintiff's complaint was based on a mortgage loan, citing *McAnaney*, 2008 WL 2702348 at *6).

### 2. Legal Standard Governing Borrowers' Right to Rescind Under TILA

15 U.S.C. § 1635 governs the borrower's right under TILA to rescind a "consumer credit transaction. . . in which a security interest. . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). Under this section, the borrower has a right to rescind "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later." *Id.* Until the lender makes all

---

transactions. This means that the credit plan must be usable from time to time and the creditor must legitimately expect that there will be repeat business rather than a one-time credit extension. . . . The fact that a particular consumer does not return for further credit extensions does not prevent a plan from having been properly characterized as open-end." See 12 C.F.R. Pt. 226, Supp. I.

8

required "material disclosures," therefore, the three-day time rescission period does not begin to run. "The term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in § 226.32(c) and (d)."[29] 12 C.F.R. § 226.23(a)(3) n. 48.

---

[29]12 C.F.R. §§ 226.32(c)-(d) provide:

"(c) Disclosures. In addition to other disclosures required by this part, in a mortgage subject to this section, the creditor shall disclose the following in conspicuous type size:

(1) Notices. The following statement: 'You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.'

(2) Annual percentage rate. The annual percentage rate.

(3) Regular payment; balloon payment. The amount of the regular monthly (or other periodic) payment and the amount of any balloon payment. The regular payment disclosed under this paragraph shall be treated as accurate if it is based on an amount borrowed that is deemed accurate and is disclosed under paragraph (c)(5) of this section.

(4) Variable-rate. For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under § 226.30.

(5) Amount borrowed. For a mortgage refinancing, the total amount the consumer will borrow, as reflected by the face amount of the note; and where the amount borrowed includes premiums or other charges for optional credit insurance or debt-cancellation coverage, that fact shall be stated, grouped together with the disclosure of the amount borrowed. The disclosure of the amount borrowed shall be treated as accurate if it is not more than $100 above or below the amount required to be disclosed.

(d) Limitations. A mortgage transaction subject to this section shall not include the following terms:

(1)(i) Balloon payment. For a loan with a term of less than five years, a payment schedule with regular periodic payments that when aggregated do not fully amortize the outstanding principal balance. (ii) Exception. The limitations in paragraph (d)(1)(i) of this section do not apply to loans with maturities of less than one year, if the purpose of the loan is a "bridge" loan connected with the acquisition or construction of a dwelling intended to become the consumer's principal dwelling.

(2) Negative amortization. A payment schedule with regular periodic payments that cause the principal balance to increase.

Not every disclosure required by the statute is a "material disclosure" that, if not provided to the borrower, will prevent the three-day period from running. As explained in the Federal Reserve Board's Official Staff Interpretation of 12 C.F.R. § 226.23, "[f]ootnote 48 sets forth the material disclosures that must be provided before the rescission period can begin to run. . . . Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions."[30]  See 12 C.F.R. Pt. 226, Supp. I; see also *Ngwa v. Castle Point Mortgage, Inc.*, No. 08 Civ. 0859(AJP), 2008 WL 3891263, *7 (S.D.N.Y. Aug. 20, 2008) ("[T]he extended rescission right is only available when a creditor fails to provide the disclosures required by 15 U.S.C. § 1635(a) [which requires disclosure of the right to rescind] and 12 C.F.R. § 226.23(a)(3) n. 48" (footnotes omitted), citing *Fiorenza v. Fremont Inv. & Loan*, No. 08 Civ. 858, 2008 WL 2517139, *3 (S.D.N.Y. June 20, 2008) ("Only the failure to provide those disclosures required by section 1635 and set forth in footnote 48 will result in an extension of the rescission period") and *Mayfield v. General Electric Capital Corp.*, No. 97 Civ. 2786, 1999 WL 182586, *7 (S.D.N.Y. Mar. 31, 1999) ("[O]nly failure to provide 'material disclosures' or failure to disclose a right to rescind, give rise to a right to rescind")). Even where the lender has not provided the disclosures necessary to trigger the three-day rescission period, however, the right to rescind "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." See

---

(3) Advance payments. A payment schedule that consolidates more than two periodic payments and pays them in advance from the proceeds.
(4) Increased interest rate. An increase in the interest rate after default.
(5) Rebates. A refund calculated by a method less favorable than the actuarial method (as defined by section 933(d) of the Housing and Community Development Act of 1992, 15 U.S.C. 1615(d)), for rebates of interest arising from a loan acceleration due to default."

[30]The Official Interpretations have the status of regulations. *Benion*, 144 F.3d at 1058 (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565-70 (1980), *McGee v. Kerr-Hickman Chrysler Plymouth, Inc.*, 93 F.3d 380, 383 (7th Cir. 1996) and *Cades v. H & R Block, Inc.*, 43 F.3d 869, 875 (4th Cir. 1994)).

10

15 U.S.C. § 1635(f).[31]

### 3. Whether Defendants' Alleged Failure to Provide the *Consumer Handbook on Adjustable Rate Mortgages* Provides a Right to Rescind

TILA imposes additional disclosure requirements on transactions like the one at issue here, which have "a term greater than one year," are "secured by the consumer's principal dwelling with a term greater than one year," and provide that the "annual percentage rate may increase after consummation." These include a set of special early disclosure requirements. See 12 C.F.R. § 226.19(b). One of the early disclosure requirements mandates that the lender provide "[t]he booklet titled Consumer Handbook on Adjustable Rate Mortgages published by the [Federal Reserve] Board and the Federal Home Loan Bank Board, or a suitable substitute" "at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier." 12 C.F.R. § 226.19(b)(1).

The requirement that a lender provide the Handbook, however, is not "considered [a] 'material disclosure[ ]' which, if not provided before consummation of the transaction, will trigger the extended rescission period." *Ngwa*, 2008 WL 3891263 at *10 (citing 15 U.S.C. § 1635(f), 12 C.F.R. § 226.23(a)(3), and *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, *14 (N.D. Ill. Apr. 28, 2003)); see also 12 C.F.R. Pt. 226, Supp. I. Thus, defendants' alleged failure to give plaintiff a copy of the Handbook, while a violation of TILA, does not extend plaintiff's rescission period. See *Ngwa*, 2008 WL 3891263 at *10 (citing *Pulphus*, 2003 WL 1964333 at *14); see also 12 C.F.R. Pt. 226, Supp. I. As a result, the court will not consider evidence concerning plaintiff's receipt or non-receipt of the Handbook in assessing her entitlement to a preliminary injunction.

### 4. Whether Defendants' Failure to Disclose Information Related to Potential Rate Increases Provides a Right to Rescind

#### i. Whether Plaintiff Has a Right to Rescind Based on Violation of

---

[31] An exception to the three-year limit, not relevant here, applies in cases involving agency enforcement actions. See 15 U.S.C. § 1635(f).

**12 C.F.R. § 226.18**

Plaintiff also alleges that defendants failed to give her documentation providing an example of the payment terms that would result from an increase in the interest rate on the loan. Plaintiff cites 12 C.F.R. § 226.18(f)(1), which requires disclosure of "[t]he circumstances under which the rate may increase," "[a]ny limitations on the increase," and "the effect of an increase."[32] Section 226.18(f)(1), however, applies only to "transaction[s] not secured by the consumer's principal dwelling or . . . transaction[s] secured by the consumer's principal dwelling with a term of one year or less," where "the annual percentage rate may increase after consummation." Because plaintiff's loan is secured by her principal dwelling and has a term longer than one year, § 226.18(f)(1) does not apply.

Subsection (f)(2) of § 226.18, rather than subsection (f)(1), applies to transactions "secured by the consumer's principal dwelling" that have "a term greater than one year" and an "annual percentage rate [that] may increase after consummation." Under subsection (f)(2), the lender must disclose "[t]he fact that the transaction contains a variable-rate feature," and "[a] statement that variable-rate disclosures have been provided earlier." Unlike a failure to make the early disclosures required by 12 C.F.R. § 226.19, failure to make the disclosures required by § 226.18(f) delays commencement of the rescission period. See *Ngwa*, 2008 WL 3891263 at *10 ("With variable-rate interest loans, TILA requires creditors to make two sets of disclosures. First, TILA requires lenders to provide the specific variable-rate program disclosures and the 'booklet titled Consumer Handbook on Adjustable Rate Mortgages.' The first set of disclosures are required 'at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier.' The second set of variable-rate disclosures are required 'before consummation of the transaction' and must include a statement 'that the transaction contains a variable-rate feature' and a statement 'that [the] variable-rate disclosures have been provided earlier.' Only the second set of disclosures are considered 'material disclosures' which, if not provided before consummation of the transaction, will trigger the extended rescission period"

---

[32]Complaint, ¶ 45.

12

(citations omitted) (alteration original)).

The TILA disclosure statement plaintiff received and signed on December 23, 2005 states: "Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier."[33] Because this satisfies § 226.18(f)(2)'s disclosure requirements, plaintiff cannot rescind for failure to comply with that regulation.

### ii. Whether the Information Related to Potential Rate Increases Was a "Material Disclosure"

One of the "material disclosures" required by 12 C.F.R. § 226.32 is: "For variable-rate transactions, a statement that the interest rate and monthly payment may increase, and [a statement of] the amount of the single maximum monthly payment, based on the maximum interest rate required to be disclosed under § 226.30." 12 C.F.R. § 226.32(c)(4). Section 226.30 requires, in pertinent part, that "[a] creditor shall include in any consumer credit contract secured by a dwelling . . . the maximum interest rate that may be imposed during the term of the obligation when: [i]n the case of closed-end credit, the annual percentage rate may increase after consummation." (footnote omitted).

As noted, the interest rate on plaintiff's loan was variable and could be increased after consummation of the loan transaction. The maximum interest rate was disclosed in an "Adjustable Rate Rider" attached to the deed of trust.[34] The TILA disclosure documents submitted by defendants in support of their claim that they complied with all statutory requirements do not disclose the maximum interest rate or monthly payment, however. Nor do they include a statement that the interest rate or monthly payment might increase.[35] Plaintiff asserts in her

---

[33]Jackson Decl., Exh. 5.

[34]*Id.*, Exh. A at 19.

[35]Defendants cannot rely on the disclosure of the maximum interest rate in the adjustable rate rider to satisfy this requirement. The required disclosures under TILA must be "grouped together" and "segregated from everything else." See 12 C.F.R. § 226.17. The information in the adjustable rate rider is separate from the "Federal Truth-In-Lending Disclosure Statement" provided to plaintiff. Beyond the statement, in a diminutive font, that "[y]our loan contains a

declaration that "none of the documentation provided to [her] showed an example of the payment terms that would result [from] an increase in the rate."[36] The loan agreement and disclosure documents submitted by defendants support plaintiff's contention. Based on the evidence presently before the court, therefore, it appears that plaintiff is likely to succeed on the merits of her claim that she did not receive all material disclosures required by TILA, and that the three-day rescission period did not begin to run as a result.

### 5.   Whether Plaintiff Properly Rescinded the Transaction

The loan transaction closed on December 23, 2005. Thus, plaintiff had until December 23, 2008 to rescind the transaction. See 15 U.S.C. § 1635(f). Plaintiff has submitted evidence that she mailed a letter to Ocwen and Quality Loan on December 20, 2008, rescindng the transaction because, *inter alia*, defendants failed to comply with TILA by "understating the APR" of the loan.[37] Defendants do not proffer any contradictory evidence or challenge plaintiff's assertion regarding the letter. Under 12 C.F.R. § 226.23(a)(2), a notice of rescission is effective when mailed. Thus, plaintiff's notice was timely.

The issue remains, however, whether plaintiff provided notice to the proper party. Plaintiff alleges that Ocwen is the servicer of her loan. Accordingly, Ocwen is not a "creditor" under TILA, and plaintiff could not effectively rescind by sending notice to Ocwen. See 15 U.S.C. § 1602(f) ("The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such

---

variable rate feature," nothing in the disclosure documents addresses the fact that the interest rate is subject to vary or specifies the amount by which it may vary. Moreover, the adjustable rate rider specifies only the maximum interest rate. It does not provide the resulting maximum *monthly payment*, as required by section 226.32(c)(4). (See Jackson Decl., Exh. D.)

[36]Demarest Decl., ¶ 4.

[37]*Id.*, ¶ 8, Exh. 4.

evidence of indebtedness, by agreement"); 12 C.F.R. § 226.23(a)(2) ("To exercise the right to rescind, the consumer shall notify *the creditor* of the rescission by mail, telegram or other means of written communication" (emphasis added)).[38]

Plaintiff's notice to Quick Loan, by contrast, may have been sufficient to rescind the transaction. Although it appears that HSBC, not Quick Loan, was the owner of plaintiff's debt at the time plaintiff attempted rescission, TILA provides that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1640. Although there is little precedent on the issue, courts in other circuits have found that timely notice to the original creditor is sufficient to rescind a transaction, whether or not that creditor has subsequently assigned the loan to another party. See *Hubbard v. Ameriquest Mortgage Co.*, No. 05-CV-389, 2008 WL 4449888, *6 (N.D. Ill. Sept. 30, 2008) ("The question raised by Deutsche Bank's argument is whether Plaintiff's timely notice to the original lender is sufficient to effectuate rescission as to assignees who did not receive timely notice. Upon examination of the statutory language, its implementing regulations, the pertinent case law, and the role that rescission plays within the TILA scheme, the Court concludes that Hubbard's timely rescission request as to Ameriquest is equally effective against Deutsche Bank as assignee, despite lack of notice to Deutsche Bank within the three year window"); see also *Schmit v. Bank United FSB*, Civil Action No. 08 C 4575, 2009 WL 320490, *3 (N.D. Ill. Feb. 6, 2009) ("The reasoning in *Hubbard* is persuasive").

The court finds *Hubbard* convincing, and concludes there is a likelihood plaintiff will be

---

[38] For the same reason, plaintiff cannot maintain a TILA rescission claim against Ocwen. See *Boles v. Merscorp, Inc.*, No. CV 08-1989 PSG (Ex), 2008 WL 5225867, *3 (C.D. Cal. Dec. 12, 2008) ("By Plaintiff's own admission, CLC is solely a servicer who serviced Plaintiff's second loan. . . . Plaintiff alleges that National City Mortgage, not CLC, extended consumer credit to him. . . . Since Plaintiff has alleged no facts to support a determination that CLC comes within the statutory definition of 'creditor' under TILA, this Court finds that CLC is not subject to the disclosure requirements of TILA. Consequently, Plaintiff cannot sustain his rescission claim under TILA against CLC" (citations to record omitted)).

able to establish that she properly rescinded the transaction.[39] Because the evidence before the court indicates that defendants failed to make all material disclosures required under TILA, and further that plaintiff timely rescinded the loan agreement, plaintiff has shown a likelihood that she will succeed on the merits of her TILA rescission claim.

### C. Whether Defendants Have Demonstrated a Likelihood of Success on Their Affirmative Defense of Unclean Hands

Before concluding definitively that plaintiff has shown a likelihood of success on the merits of her TILA claim, however, the court must consider whether defendants have demonstrated that they are likely to succeed in proving their unclean hands defense. See *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ("Because 'the burdens at the preliminary injunction stage track the burdens at trial,' once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed," quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)).

The equitable doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the [other party.]" *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (quoting *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945)). "To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant." *Survivor Productions LLC v. Fox Broadcasting Co.*, No. CV01-3234 LGB (SHX), 2001 WL 35829270, *3 (C.D. Cal. June 12, 2001) (citing *JTH Tax, Inc. v. H & R Block Eastern Tax Services, Inc.*, 128 F.Supp.2d 926, 949 (E.D.Va.2001)). "In applying the doctrine, '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right

---

[39] Nothing in the record establishes that HSBC ever informed plaintiff that it had taken an assignment of her loan from Quick Loan. This fact provides further support for adoption of the rule in *Hubbard* in this case.

he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants.'" *Ellenburg*, 763 F.2d at 1097 (quoting *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir.1963); see also *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987) (to establish unclean hands, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims").

Defendants assert that plaintiff has unclean hands because she failed to make her loan payments. Plaintiff acquired the right at issue, i.e., the right to rescind the loan transaction, at the time transaction was consummated, based on defendants' failure to make all necessary TILA disclosures. Plaintiff's failure to pay occurred after execution of the loan agreement, and thus does not affect her right to rescission. See *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 174 (9th Cir. 1989) ("Avcar's alleged misconduct (failure to perform under the franchise agreement) is unrelated to the issue of whether Avcar is entitled to rescind the franchise agreement. Avcar's misconduct occurred after the execution of the franchise agreement. Based on DSI's preceding franchise violations, the sale of the franchise was unlawful and thus Avcar had the right to rescind the franchise agreement immediately upon its execution. Therefore, any subsequent nonperformance of the franchise agreement did not affect Avcar's right to rescission. Accordingly, Avcar's rescission claim is not barred by the doctrine of unclean hands"); see also *Floyd v. Security Finance Corp. of Nevada*, 181 F.Supp.2d 1137, 1142 (D. Nev. 2001) ("Defendants state that even if their behavior is found to be in violation of TILA and Regulation Z, Plaintiff should be barred from relief because of the unclean hands doctrine. Defendants allege that Plaintiff defaulted on the January 1999 loan and is therefore not entitled to relief. Whether or not Plaintiff actually defaulted on the January 1999 loan is immaterial to the determination here, however. The Ninth Circuit has followed a general trend that interprets TILA to require strict adherence to its directives. *Semar v. Platte Valley Federal Savings and Loan Ass'n*, 791 F.2d 699, 703-04 (9th Cir.1986) ('TILA and Reg[ulation] Z contain detailed disclosure requirements for consumer loans. . . . Technical or minor violations of TILA or Reg[ulation] Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind'). . . .

1  Further, the Ninth Circuit has pointed out that 'Congress did not intend for TILA to apply only
2  to sympathetic consumers; Congress designed the law to apply to all consumers, who are
3  inherently at a disadvantage in loan and credit transactions.' *Jackson v. Grant*, 890 F.2d 118, 122
4  (9th Cir.1989)"); *Clay v. Johnson*, 22 F.Supp.2d 832 (N.D. Ill. 1998) ("Defendants assert the
5  equitable defense of unclean hands in that they allege that the Plaintiffs never had any intention
6  of paying what they owed under the contract. TILA and the associated regulations provide for
7  waiver of the consumer's right to rescind under only a very limited number of circumstances. . . .
8  This implies that, under all circumstances except for the ones outlined in 12 C.F.R.
9  § 226.23(e)(1), the consumer retains all of her rights under the Act including the right to rescind
10 when she has not received all the required disclosures under the Act"). Consequently, the court
11 concludes that defendants have not carried their burden of showing that they will likely prevail on
12 their unclean hands defense.

13 **D.    Whether Plaintiff Has Demonstrated a Likelihood of Irreparable Harm**

14 The loss of one's personal residence due to foreclosure constitutes irreparable injury. See,
15 *Avila v. Stearns Lending, Inc.*, No. CV 08-0419-AG(CTx), 2008 WL 1378231, *3 (C.D. Cal.
16 Apr. 7, 2008) ("Plaintiffs cite many cases for the proposition that '[l]osing one's home through
17 foreclosure is an irreparable injury.' See, e.g., *Wrobel v. S.L. Pope & Associates*, [No.
18 07CV1591 IEG (BLM)], 2007 WL 2345036, *1 (S.D. Cal. June 15, 2007). Plaintiffs also point
19 out that they will lose their right to rescission under 15 U.S.C. § 1635(f) if their home is
20 foreclosed upon. The Court agrees. 'The imminent foreclosure of Plaintiff's residence presents
21 a threat of irreparable harm.' *Nichols v. Deutsche Bank Nat. Trust Co.*, [Civil No.
22 07cv2039-L(NLS)], 2007 WL 4181111, *3 (S.D. Cal. Nov. 21, 2007). Plaintiffs have shown the
23 possibility of irreparable injury if the preliminary injunction does not issue"). Because defendants
24 will almost certainly proceed with the trustee's sale if not enjoined from doing so, plaintiff has
25 demonstrated a likelihood of irreparable harm.

26 **E.    Conclusion Regarding Preliminary Injunction**

27 As noted, the court may issue an injunction if the moving party establishes either (1) a
28 combination of probable success on the merits and the possibility of irreparable harm or (2) the

existence of serious questions going to the merits, a demonstration that there is at least a fair chance the movant will prevail, and a balance of hardships that tips sharply in the movant's favor. *Miller*, 19 F.3d at 456. Plaintiff has demonstrated a likelihood of success on the merits of her TILA rescission claim and a possibility of irreparable harm; defendants have failed to demonstrate that they are likely to succeed on their affirmative defense. In addition, the balance of hardships strongly favors plaintiff. Plaintiff will lose her home if an injunction does not issue. By contrast, defendants identify no serious hardship they will suffer if the trustee's sale is delayed until resolution of this matter. Consequently, plaintiff would be entitled to preliminary injunctive relief even if the court were to conclude that she had shown only "serious questions" going to the merits of her claim. See *Sun Microsystems*, 188 F.3d at 1119 ("[T]the greater the relative hardship to the moving party, the less probability of success must be shown"). As a result, plaintiff's motion should be granted unless defendants' assertion of unclean hands bars an injunction in this case.[40]

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction is granted. Defendants are enjoined from proceeding with a trustee's sale of the property pending resolution of this action.

DATED: April 6, 2009

                                                *Margaret M. Morrow*
                                                MARGARET M. MORROW
                                                UNITED STATES DISTRICT JUDGE

---

[40] Because the court reaches this conclusion based on defendants' apparent failure to disclose the maximum monthly payment as required by 12 C.F.R. § 226.32(c)(4), it does not reach plaintiff's remaining contentions. The court notes, however, that defendants appear to have violated other disclosure requirements as well, e.g., the requirement that the disclosures include the following statement that: "'You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.'" See 12 C.F.R. § 226.32(c)(1); 12 C.F.R. § 226.23(a)(3) n. 48 (the disclosures listed in § 226.32 are "material disclosures" which the lender must give the borrower to trigger the three-day rescission period).